Good morning, Your Honor. May it please the Court, my name is Jason Silver. I'm here in this courtroom with my client, Ryan Patterson, to my left, the appellant in this case. This is an appeal for tax evasion, but this is not a tax case. The central issue in this case is a Sixth Amendment confrontation case. The Bank Deposit Analysis, also we refer today as the BDA, is what we could not confront in this case. Unfortunately, we are here today because the IRS's cooperating revenue agent, Deborah Steele, did not save her analysis because she didn't have enough memory on her computer. She forgot. She gave — You're complaining about her own notes, correct? And you had the opportunity to cross-examine her for a day or so, it looked like.  We had the opportunity to ask her questions. Unfortunately, we needed to ask her questions about her analysis. The analysis was the crux of the government's case. The government chose an indirect method of proof here. That is a Bank Deposit Analysis, and she testified on how she did this Bank Deposit Analysis. She took 14,000 pages. She loaded them up into the government's proprietary software, and then based upon her experience, she started taking items away from there. Okay? That's what she testified about. Then she wrote the information down in some sticky notes, which we don't even have our sticky notes. We don't have those to cross-examine. And when we start examining her, cross-examining her on these issues, she admits that she messed up. She didn't save her analysis. And because she didn't save her analysis, we weren't given the opportunity to be able to look at, for example, here's a deposit on January 15th of 2015, and this is from ABC Company, and ask her why this was not — What supporting materials for this were put into the record? Was the large, the omnibus Excel or spreadsheet put into the record, but just not the sorting of it, or neither of those? Great question, Your Honor. Nothing was put into it. The government, typically in these types of cases, and I've seen hundreds of these cases in my career, the government would have an Excel spreadsheet. And that Excel spreadsheet would have in there all the inputs for deposits, and it would show all the deposits. As she testified, it would include all the deposits. And then it would start deducting things, for example, transfers, if there was a tax refund, things like that. And we were not afforded the opportunity to go through that spreadsheet with her and go item by item on whether or not an item was includable in taxable gross receipts or excluded, and the reasons for that. Now, when we did talk with her about a couple different checks, for example, service experts, the government put some selective checks in. See, we talked to her about service experts, and she included — indicated that she included this in her analysis. We didn't have the spreadsheet, the big, huge, omnibus spreadsheet to go through, but we questioned her about it. And she said, yep, I included that in my analysis. And then we went through the tax returns with her, which she said she looked at, and we showed service experts was actually an entity that Mr. Patterson was a partner in. And she acknowledged that it could have been a reimbursement or another non-taxable. She also had some other checks that she plucked from there, some checks from some third parties. And these third parties, she never interviewed these third parties. She never read any memorandums of these third parties. And she said, yep, I included all these third parties into my analysis. But we don't know if she included it in her analysis or not because we don't have the analysis. We don't have the spreadsheet. This is something that is not only required, it is needed for us to be able to cross-examine her on these issues. And if this was even at a civil level, this would have not even got past a civil court, and in this case, a U.S. tax court. It would have demanded an analysis. And then what would we have behind that? We would have the bank records, 14,000 pages of bank records. And the government, after the Court initially denied putting those bank records in, the Court later changed its mind. But the Court acknowledged what the Court stated when it went over this. It said to say that the jury is somehow going to be moved in any way because they have got all those bank records in front of them, and they can go through them and try to replicate that formula. I don't think that makes sense. That's what the Court said initially when it didn't let the bank records in. And then the Court went on to say when, after it did let the bank records in, the trouble that the Court had and that the jury may have is that due to the testimony of Ms. Steele, there was a lack of tying up how we get from those records at the base, the bank individual transaction records, to her ultimate conclusion because the work isn't shown. We don't have the work to look at. That's the crux of this case. And subsequent to all our briefings in this case, Your Honor, Smith v. Arizona came out. In that case, the Court, that came out on 6-21-2024. The U.S. Supreme Court indicated the maker of the statements in Smith wasn't in the courtroom, and Smith couldn't ask her any questions. Here, we couldn't ask any questions of the bank deposit analysis, any questions at all. We functionally have the same thing that the Court had in Smith, which is here in Arizona case, and the Court overruled the lower courts in that matter. To make it worse, the Court, the Internal Revenue Service cooperating revenue agent didn't follow her own manual, not only her case law. There's no statute that says how you have to do a bank deposit analysis. The government has an Internal Revenue Manual. It lays out how you need to do it. The first thing you have to do in a bank deposit analysis, very, very important, cash on hand. And why is cash on hand so important? Well, it's the starting point. The case law has indicated such. The government's manual indicates that it's important because the defendant may have a cash hoard. Didn't the government explain its position on why it thought that was not material? You're right. They indicated that. They said it was de minimis. But how do we know it was de minimis? What is de minimis? They didn't quantify what de minimis was. We don't even know whether or not any of those cash deposits were included in a bank deposit analysis or excluded. We just don't know. The detail of the bank deposit analysis wasn't provided by the government, as we indicated before. The big omnibus spreadsheet wasn't provided. But the government makes a huge deal in the case about cash. They put on Ms. Durand, who started working towards the end of 2015, subsequent to her, one of the superintendents, Mr. Lawson. And they talk about cash, cash, cash, cash, cash. I mean, there's a big, huge description about it. But yet, on the other hand, the government says cash is de minimis. It's not important. Well, that's not what the courts have said. The courts have said as we put in our briefings, cash on hand is the starting point for each and every year. You have to look at cash. Now, Judge Collins earlier today on the first hearing was talking about the court in that case making some kind of oral findings and that there was a rule that says maybe it can't be oral findings. Well, the lower court talked about maybe an oral bank deposit analysis here. Well, I've gone through high and low civil and criminal cases. I've not found a single case that says you can have an oral bank deposit analysis. But let's just say there is such a thing, just for sake of argument. Let's do a hypothetical. Well, what would be an oral bank deposit analysis? That would be Ms. Steele going through line by line by line in an omnibus spreadsheet, as the court indicated, and indicating what was included in tax workers' receipts, what was excluded in tax workers' receipts. So even if you could have an oral bank deposit analysis, that analysis was not even done in this case. We also have some exhibits here. We have some exhibits 395 and 397. These are a couple exhibits that were initially entered into evidence, later withdrawn by the court correctly. But we objected to these exhibits being entered. And the reason we objected to these exhibits being entered is the case law provides that these records cannot be used as demonstrative exhibits at a closing argument unless you have the underlying documents that substantiate these charts. And what did the government do? They took the charts, and they put them up in front of the jury, and they told the jury, because they knew they couldn't go back into the jury room with them, these are important. Write these numbers down. And if you need to be able to confirm them, take these numbers and look at these 14,000 pages of bank history, and this will prove that there is unreported income, a daunting task, even for Ms. Steele, who is a seasoned revenue agent, to do that in the approximately four hours that the jury deliberated, something that the jury could not do. The government then makes some arguments in this case. Well, you could have brought forth Ms. Steele, and you could have examined or cross-examined her on the special agent's report or the appendices to the special agent's report. Or you could have brought forth the IRS special agent, Jake Pennell, and you could have questioned him on that because you made a TUI request to have him as a witness. Your Honors, that's not our burden of proof. That's the government's burden of proof. It was coming upon them to put forth the witnesses they thought they could have taken on redirect, they could have taken Ms. Steele, and they could have attempted to put the special agent's report into evidence. It's not in evidence, or the appendices in evidence, those are also not evidence. It could have done this with Mr. Jake Pennell, the special agent. They also didn't do that. We then get our verdict, and after the verdict, after several hearings and sentencing, the judge does something very unusual. After he sentenced Mr. Patterson to 20 months, he asked for an oral motion at that time, and he asked whether or not we think Mr. Patterson should be released pending appeal. Sides made their arguments, and under 18 U.S.C. 3143b, which the second part of it says, that the appeal can't be done for delay, and it raises substantial questions the law are, in fact, likely to result in reversal, order of a new trial, a reduced sentence, or no sentence at all. And the Court did something that I've never seen or any of my colleagues have ever seen. The Court granted our motion and allowed Mr. Patterson to be released pending his appeal. We asked this Court to grant our Rule 29c motion that we filed in this case because the government did not prove an additional tax-due in owing. They picked their method of proof here. We didn't pick it. They picked it. They went after him for evasion. And one of the key elements of evasion is an additional tax-due in owing. They didn't have his books and records, so they had to take the bank records. And we don't have the omnibus spreadsheets for the analysis. And because we don't have that, any documents that they have would be hearsay as it relates to that. Ms. Steele should have been — her testimony should have all been stricken, and the Court should have granted our Rule 29c motion and should have acquitted Mr. Patterson. I'll reserve the rest of my time for rebuttal. Thank you, counsel. Thank you, Your Honor. I'm here for the government. Good morning, Your Honors. May it please the Court, Aaron Ketchel for the United States. There are a number of issues conflated here, so I'd like to try and distill them a little bit from Appellant's opening argument. The primary argument made here is a sufficiency of evidence argument. This is something that the Court reviews de novo, and I think there's a fairly straightforward approach that the Court can use here, because the Court evaluates all the evidence that was admitted at trial and could be considered by the jury. Counsel, opposing counsel says that there was no evidence admitted into the record that showed the agent's work. What's your response? Very straightforward, Your Honor. First, let me even set aside her testimony about her analysis, which I will submit is supported by the case law. Defense argues that once Exhibit 397, which is at 9ER-1843, was excluded, there was no evidence. Defendant admitted the exact same evidence. That is at SER-84. And if the Court compares to the other evidence, there is no evidence. That was determined to be demonstrative evidence, ultimately? No, Your Honor. No? No. Under cross-examination, and this was done at 6ER-1099, under cross-examination of Ms. Steele, the defendant admitted a 45-49 report. This is at SER-84. And if you compare the — Was that prepared by her? Yes, it was, as an official IRS tax document showing tax due and owing. And in this document, it shows the tax due and owing, the additional tax due and owing, or the unreported income. But his objection is that how she arrived at that amount, no evidence was presented showing how she arrived at that number. So what's your response to that? Okay. So I think that's a slightly different argument, Your Honor, because I don't think it's sufficiency of evidence. The sufficiency of evidence, he admitted a document that showed the tax due and owing. I'm asking you to answer a specific question, a specific statement that he made. His statement was that there was no evidence put into the record that would show how she arrived at her conclusion. Yes, Your Honor. What's your response to that? It was her hours of testimony describing on how she arrived at her conclusion. The problem is we have a massive raw data, I mean, because, you know, the records are introduced, and then she sorts them, one pile, another pile, another pile, another pile, adds them up. But we have no idea how she sorted them. None at all, as I understand it. Well ---- Is that correct, that there's nothing in the record that shows, like, these entries went into this pile, these went into this, these records went here? We just have the record and her general description of the methodology and the conclusion, but no work in between? The precise numbers, Your Honor, you're correct. But let me just clarify something, because, Judge Collins, you asked a question about what data was in the record. There were two steps done, as Your Honor pointed out. The raw bank data was ingested into an Excel platform, which then Ms. Steele testified that she sorted into income deposits and non-income deposits. And that sorting is not in the record? Correct. The sorting ---- the sorting sheet is not in the record. Did the tax court accept this in a civil case? Take my word for it. I sorted it. Here it is. Well, two points, Your Honor. One, as a legal standard, I think this meets the legal standard that was set forth in these cases ---- in the BDA cases from this Court, including Solware, Shields, Stone. Solware, for example, was ---- Are there also no show-your-work cases? All of those cases refer to testimony alone. There is no ---- I don't ---- there is no case law that says that a summary agent has to reduce their intermediate steps. Doesn't this put ---- I mean, it puts the whole trial into a ---- take the agent's word for it. The jury has no ability to independently assess the facts. It's just agent sounded good. I guess that's it. I mean, there's no independent ability to weigh this. A few points on this, Your Honor, if I may. Unless, what, it's supposed to go through the mass of financial records themselves? No. I think they could. Part of the examination is an ---- this was an extensive examination, both on direct and cross, on her methodology and what categories she looked at. This is also not a complex calculation. And defense said to the jury in opening ---- But that's why it's kind of incredible that she doesn't save the work. It's not that hard to mark in an Excel sheet particular entries and then have them sorted out. It's not that hard to do.  And it wasn't done. And then it becomes a take my word for a trial. Well, Your Honor, part of the reason why this is really a red herring is because the work was done. And it was ---- and the defense had all of the work. That was in the special agent report. There are two kind of processes done in parallel. There was a special agent report that contained 50 schedules. And Ms. Steele testified that she worked on the 50 schedules. And she admitted and she described the work that she did with the case agent on the 50 schedules, all of which were included in the special agent report and detailed in the precise detail that Your Honor is asking about. And the reason we know that is because the defendant's own expert stated just that. And that is in his report, which we submitted as part of the PSR submission ---- Sotomayor, but if you had the sorting analysis done, why didn't it go into evidence in this ---- in the record of this case? Well, Your Honor ---- The jury would see how the numbers were actually derived. Right. But the cross-examination was ---- part of the cross-examination here is looking at what non-income deposits there can be. And in certain cases, that can be a complex question. There could be a lot of cash generation which is deposited. And you have to explain why the cash that was deposited was not previously cash on hand that was non-income deposits. There could be complex loan transactions, like in the Morse case. There can be complexity to this. But this is not that case. What Ms. Steele testified to categorically, she saw no gifts. She said that categorically. Categorically, she saw no inheritances. She saw de minimis cash deposits. There was testimony about cash, but that was cash collected from customers and used to pay off contractors, never deposited. So that is not inconsistent with her testimony that she saw de minimis cash deposits. She also said she saw very few loans and that she testified about what those loans were. Those were loans that the defendant used to buy a home in 2016 despite reporting negative income that year. So she testified, and all of those things could have been tested on cross-examination. Defense counsel asked her under cross-examination, didn't you see a high number of inter-account bank transfers? She said yes. So her methodology could be tested. And what you see in all of these cases, Solware, Shields, Solware is a good example. In Solware, the agent who testified was not even the agent who did the work. This was a second agent who came in and talked about the work done by another agent, and they used summary charts, and in Solware, and in most of these cases, the Court recognized that the records were incomplete. And what the Court has said repeatedly is that the precise amount of tax loss is a record that is irrelevant. That is not the question. The question is whether the government or whether the investigation has sufficiently and adequately was sufficient to adequately support an inference that the unexplained excess in receipts was attributable to taxable income. There were no other sources of income here. There was large amount of unreported receipts, which was conceded by defense counsel in opening, that tax records did not hit the books. This was a case all about unreported expense. That was what the defense was going to be, is that there were unreported expenses that washed out the unreported revenue. And that is why, you know, initially, we admitted the summary charts, the 395 and 397. Those were admitted without objection because, and those have been shared with defense counsel prior to trial, and they were admitted without objection because that really wasn't the crux of the case. They were conceding that there was unreported revenue is what those charts showed, and what defendant ultimately admitted himself in Exhibit 487 was showing unreported revenue. And what the cases have said is that at the point that the government shows unreported revenue and creates an inference that there was unreported revenue that was not reported on taxes, it then becomes the defendant's burden to speak up and explain the unreported revenue. Defendant discusses it as a burden shifting, but it actually is a foundation of this BDA analysis, and I think the reason for that is because the reason you get to a BDA analysis to begin with is because the taxpayer doesn't have the records that they're required to have. Taxpayers are required to keep their records under law, but when the records are not available to the government, like in this case, there was a suspicious flooding incident that eradicated all of the records, then the government has to do a bank deposit analysis in order to determine whether there was unreported revenue. Well, of course, the government only has limited visibility as to what all of the deposits are. They do their best. They testify about their best efforts to do this, and they are allowed to testify in a summary fashion about what they did. Their methodology can be tested. The fact that she didn't save her work was tested in length on cross-examination. Counsel started here by talking about the Sixth Amendment, and I think, Judge Fitzwater, you put it correctly when under Owens, under the Supreme Court case, the test for the Sixth Amendment is whether there is a unrestricted ability to cross-examine a witness. That's what occurred here. There was no restrictions placed on their ability to cross-examine Ms. Steele. They made great hay about the fact that she did not save her work and parts of her methodology, and they also made great hay about the fact that she did not account for unreported expenses, which she had conceded she did not. She took defendant's word based on the expenses that he reported in his own return. And so the Sixth Amendment was satisfied under Owens. Under Owens, the case was a witness who said that they could not recall a hearsay statement that they made out of court. They had made an I.D. out-of-court statement, which is hearsay. And at trial, the witness said they could not recall having made that statement. That's pretty critical evidence. And yet, under Owens, the Supreme Court said that is not violative of the Sixth Amendment because counsel had an opportunity to cross-examine and point out those issues. In this case, the district court made a finding that the defendant had an opportunity to cross-examine Ms. Steele about the warts, as he put it, in the bank deposit analysis. But there is no legal standard that requires the government to reduce its intermediate steps in a bank deposit analysis to writing. That is not what the case law says. And what the courts have repeatedly said is that — Do we have a case that specifically says you don't have to do that? Well, I think it's — I think it's inherent in these cases. I mean, in Solware — But the cases don't seem to address whether or not the intermediate work was shown one way or the other. Well, they refer to the testimony. I mean, that is the testimony. The testimony — But it could be that, from all you can tell from reading the facts as described, it could be that it was there, and then there was testimony. It's possible, Your Honor. But in Solware, there was actually a — one of the issues in Solware was about demonstrative charts that were used. So these are demonstrative summary charts, as similar here, where the court discussed the propriety of the demonstrative summary charts and how they were used. So that suggests further to me that there was not — When you say Solware, do you mean there's a Bulware, you cite, and a Solard? I'm sorry, Your Honor. I'm Solard. It's Solard. Yes. I'm sorry. I'm sorry. I was confusing the two names. Yes. Solard, Your Honor. And so in Solard, not only was it a secondary person testifying who did not do the work themselves, but they also were discussing demonstrative summary exhibits that were not admitted pursuant to 1006. But again, I think if it's a sufficiency of evidence argument, Your Honor, I think all you have to look at is Exhibit 487. Exhibit 487 went back to the jury under — admitted by the defendant and showed Ms. Steele's conclusions that there was unreported revenue. If it's a question of whether there was a Sixth Amendment violation, I think under Owens, we see that there's no Sixth Amendment violation. If it's a question about whether Ms. Steele's testimony should have been admitted as lay opinion testimony, despite not having saved her work, I think that's a distinct analysis, one that would be looked at for either plain error or abusive discretion, depending on if it was preserved. And there, I think, there's no question that Ms. Steele was permitted to describe her process, describe what action she took. And all of those were tested. And I would just point the Court back to the defense expert's submission in his written report, where he said, the BDA is presented in the government SAR. That's his report at two. He goes on to say, the BDA includes a detailed description of deposits to the Patterson's companies and Patterson's bank accounts, which concludes with revised taxable revenues for those entities. SAR appendices C1 through C9 segregate the sources of non-taxable deposits by individual bank accounts. Therefore, the BDA permits us to determine net deposits by entity by year. That's at 11. They had it. They had the data. They had detailed schedules that showed them all of this. Ms. Steele explained that she did kind of a parallel process where she, in order to create the summary charts, she segregated this data seems like she did it again, and created the summary charts on their own, and she did not save that work. Sotomayor, was the process that she's describing the process that was used to generate the SAR attachments, or did she do a second sort of, I'm doing my own check, and that's what I'm testifying to? What she testified is that she helped with the SAR documents. So she did collaborate on that. But it also seems like she did an independent second way to do the summary documents. But — And that's the thing that she testified. That's the process she's testifying. Well, it was both, Your Honor, because they were consistent. And what Mr. White said when we were cross-examining him is that there was no inconsistency between the SAR and her testimony. There's been — there has never been a showing that any of her analysis is inaccurate in any material way. The experts testified that he spent 600 hours reviewing these files, and wrote an 833-page report. There is no indication that any of Ms. Steele's work is inaccurate in any material respect. And — and the case law makes clear that the precise amount of loss is irrelevant. It's whether there was an inference that there was unreported tax revenue — or tax in — excuse me, taxable income, and that was clearly established. Defendant elected to remain silent. And under the case law for the BDA, I mean, as the Second Circuit and Slutsky pointed out, once the existence of unreported receipts is established, the defendant remains quiet at his peril. That is what the defendant did here. Unless the Court has any further questions, I'm prepared to submit. Thank you, Counsel. It appears not. Rebuttal. Thank you, Your Honor. I think the Court hit it right in the head. We are going from A to C. Here are the bank records. Here's the final result. We don't have the middle. We don't have B. Mr. Ketchell talks about that Ms. Steele had the ability and worked with the special agent in putting together all these charts and everything else. Well, I think it's really interesting that some of the first questions we asked her regarding this analysis, if you look at Exhibit 56, which isn't in evidence, we asked her, do you recognize this document? No. Did you prepare this document? No. Do you know who prepared this document? No. This was the Bank Deposit Analysis. This was just a schedule that the government had that was attached to their special agency report. Wasn't in evidence. She didn't help create these SAR documents. She didn't do that. She didn't create any of these SAR documents. That is the special agency report. She prepared an analysis. She wrote some numbers down in some sticky notes, but she didn't save it. The government does that at their own peril. I think Judge Collins indicated even in a civil case, this wouldn't have been get past first base. The tax court would have kicked this case out and would have found for the taxpayer. The government cites to the 4549 of the IRS. The document was put in evidence. It's just a calculation. It's a summary number. It's nothing. It's not the analysis. This is the government says this is not a complex case. Well, is it or isn't it? We don't know because we don't have the analysis. The government never provided to us. She talks. He says she talks about, well, she didn't include loans. She didn't include this. She didn't include that. We don't know. No analysis provided by the government. So we don't know if it was included. Also, what's our standard of review? De novo. Why is it de novo? Why is it a violation of the Confrontation Clause? I'm dealing with the Constitution, and, therefore, it's a de novo review. But if you were given the opportunity to cross-examine, excuse me, how is that a violation of the Confrontation Clause? I'm sorry. I didn't quite understand the question. If you were afforded an opportunity to cross-examine thoroughly the witness, why is there a violation of the Confrontation Clause? Because we weren't able to cross-examine this omnibus spreadsheet that may have been prepared, may have not been prepared, like Judge Polanyi did. You don't cross-examine a document. Well, we would cross-examine Ms. Steele about her document that she prepared and whether or not a certain deposit was included or not included in taxable gross receipts. We were never afforded that. We needed to ask those questions. Just like when we asked her questions about the service experts' checks, she admitted that those could be non-taxable. We should have been afforded that ability to do on every single other deposit. What case do you have that supports the proposition that it's a violation of the Confrontation Clause if you are not able to cross-examine regarding a work product? What case says that? I don't have anything right at the tip of my tongue right now, but I think we did briefly brief that in our cases. And the government talks about all these cases. And Judge Collins even indicated, well, we talk about all these cases, but all these cases, I think they all have something in common. There was actually an analysis there. Because we don't know. I mean, it doesn't say whether or not this kind of an actual line-by-line breakdown was present in those cases, either, so far as I could tell. You're right, Your Honor. It's not clear, but I think it's such a — when I start — I mean, to follow up on Judge Rollins's point, it's not a Confrontation Clause issue because the witness is on the stand. You can ask the witness anything you want. It's really more of a Foundation question or something of that nature. Did you move to exclude the testimony for lack of Foundation? We moved to exclude it for various reasons, including Foundation. Specifically for Foundation? We — I believe we made various Foundation objections. Overruled? Yes. They're all throughout the record. That's an abuse of discretion standard of review. Correct. For that, I agree with you. But what we didn't have here, Your Honor, it's clear. We didn't have the ability to talk to Ms. Steele. She is the one who prepared this analysis. And she was embarrassed that she didn't save her analysis. First it was, I didn't have enough memory. Then it's, I forgot. Whichever. It doesn't matter. She was embarrassed that she didn't save her analysis because she knows she's done over a thousand of these. She's a seasoned IRS revenue agent. And the Confrontation portion is, we didn't have the ability to go through each and every item. This is an indirect method of proof. The government chose it. We didn't choose it. They chose this indirect method of proof for whatever reason they chose it. That's not really before the court. They have it. Counsel, may I ask you this? What's your response to opposing counsel's position that the amount of the tax loss is irrelevant, just the fact that there was tax evasion? If that's established, then the amount is not critical. What's your response to that? Thank you for asking that, Your Honor. The under 26 U.S.C. 7201, it requires an additional tax due and owing. It doesn't — even $1. Does it require an amount due and owing? It's — it just requires an additional amount. The government didn't even establish one additional amount of additional tax. Your testimony wasn't sufficient to show that there were additional taxes due and owing? No. Like — like Your Honor has indicated, just take my word for it. My analysis is right. I took out the things that shouldn't be taxable. All the rest of it that we left in is taxable. Take my word for it. You don't have the ability to cross-examine me on this. They could have taken her word for it, or they could have rejected her testimony, correct? They shouldn't have ever heard it in the first place. Well, but I'm just saying, your argument was take my word for it, and the jury could take her word for it, or they could reject her testimony and acquit. They could have taken her word for it. They could have not taken her word for it. But we were never given — We're left with what the jury actually determined. And the issue is, is there sufficient evidence to support that verdict? There is not sufficient evidence. The evidence would have been the bank deposit analysis in and of itself. And they don't have that. Is there a case that says the only sufficient evidence is the base documents that go into doing an analysis? The case law discusses that in order to determine additional tax due and owing, you have to come up with some method, whether that be an indirect method of proof, whether that be a bank deposit analysis or a net worth, or a direct method of proof, which could be specific items. But they did that. They said they used the bank deposit analysis. Right. And so is there a case — and I'm back to the fact that there — I don't think there's a case that says all of the work that goes into that analysis has to be put into evidence for that analysis to be presented to the jury. There was no evidence that was put into the record in this case on what the bank — Well, her testimony is hearsay. The bank deposit analysis — It's not hearsay. She said what she did. Well, she said what she did generally. She said, I took the 14,000 pages, I put it into our proprietary software. So hearsay was the business record exception used to admit it? To admit the bank records? Correct. So it's not — I believe — I don't recall exactly what the Court said as far as admitting it, but — I can check the record. Okay. So the Court admitted the bank records, but the bank records are just raw data. Okay? Without the analysis, taking the raw data, and based on her knowledge, we have to take the raw data, and then we have — and she indicated, based on what she did, is she started doing deductions. But we don't know what those deductions are. We understand your argument. Counsel, could you sum up, please? Okay. Thank you, Your Honor. So, unfortunately, we live in a society where the public fears the IRS. And if you allow the IRS, in this case, which is the agency that did an investigation here, to go and bring forth somebody for criminal indictment and not have to show their work, just take my word for it, all these numbers are good. These are all really good numbers. I did a lot of work. But you can't examine or cross-examine on any of this. That would have a chilling effect. But you made this argument to the jury, right, that they shouldn't believe her because the work wasn't shown. You made that argument to the jury? That's one of the arguments we made. Okay. All right. Thank you, Counsel. Thank you to both counsel.  The case is submitted for decision by the Court. That completes our calendar for the day and for the week. We are adjourned. This court for this session stands adjourned.
judges: RAWLINSON, COLLINS, Fitzwater